# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CALUMET MONTANA REFINING, LLC, <br><br> Petitioner, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, <br><br> Respondent. | No. 25-633 |

## CALUMET MONTANA REFINING, LLC'S RESPONSE IN OPPOSITION TO GROWTH ENERGY'S MOTION TO INTERVENE

Petitioner Calumet Montana Refining, LLC ("Calumet") submits the following response in opposition to Growth Energy's Motion to Intervene in Support of Respondent ("Motion").

### ARGUMENT

Growth Energy seeks to insert itself into a controversy that does not implicate a direct, substantial, and legally protected interest. The Motion should be denied for multiple, independent reasons.

First, Growth Energy lacks a direct and legally cognizable interest that could justify intervening in this action, which involves a single EPA decision to deny hardship relief to a single small refinery for a single compliance year. Growth Energy's purported interest is purely economic and is based on speculation upon speculation upon speculation. Growth

1

Energy claims that: (1) *if* this Court were to vacate EPA's decision, (2) *then if* the government were to grant Calumet's 2023 hardship petition after remand, (3) *then* that doubly contingent outcome would supposedly cause a traceable decrease in demand for ethanol in the *nationwide* renewable fuels market sometime in the future, (4) *and then* Growth Energy's members would supposedly make less money. That type of attenuated economic interest cannot support intervention.

Second, Growth Energy's motion to intervene fails because the declaration on which it relies is conclusory and does not provide any evidence showing how EPA's (potential future) decision to grant Calumet's petition for hardship relief would harm its interests.

Third, Growth Energy fails to show that the government will not adequately represent its interests. Growth Energy's "ultimate objective" here is the same as EPA's—affirmance of the agency's denial of Calumet's petition for a small refinery hardship exemption for 2023. Growth Energy offers nothing to rebut this Circuit's presumption in favor of the adequacy of the government's representation. *See Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), *as amended* (May 13, 2003) ("When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises.").

Fourth, for the same reasons and because intervention would reveal Calumet's confidential business information and thereby prejudice it, *see*

Fed. R. Civ. P. 24(b)(3), Growth Energy does not meet the standard for permissive intervention, either.

Finally, this Court can prevent that prejudice while still giving Growth Energy an opportunity to express its views in this matter by allowing its participation as *amicus curiae*.

### 1. Growth Energy's Claimed Economic Interest is Speculative and Unsupported.

To intervene in the petition for review of EPA's denial of Calumet's hardship petition, Growth Energy must establish "an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest." Fed. R. Civ. P. 24(a)(2). That interest must be "direct, non-contingent, substantial, and legally protectable." *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1157 (9th Cir. 1981).

Growth Energy cannot satisfy that standard. Its purported interest—opposing any regulatory action that could allegedly decrease demand for ethanol down the line—is indirect, contingent, insubstantial, and entirely speculative.

As this Court has explained, an "economic stake in the outcome of the litigation, even if significant, is not enough" to justify intervention as a matter of right. *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993), *aff'd* 64 F.3d 1266 (9th Cir. 1995). Such an economic interest must be "concrete" to give rise to a "protectable interest," and will not support

3

intervention where, as here, it is speculative and "several degrees removed" from the "underlying subject matter of the action." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919, 920 (9th Cir. 2004); *see also, e.g.*, *Montana v. EPA,* 137 F.3d 1135, 1142 (9th Cir. 1998) ("[E]ven assuming that EPA's approval of the tribal … program might affect property values, such a speculative and purely economic interest does not create a protectable interest in litigation concerning a statute that regulates environmental, not economic, interests.").

Here, Growth Energy asserts in conclusory fashion that *if* this Court were to vacate EPA's denial of Calumet's 2023 hardship petition, and *if* EPA were to grant a hardship exemption to Calumet after remand, *then* it would "effectively reduce the required volume of renewable fuel" *which then* would "cause the demand for [its] members' ethanol to drop" and "lift regulatory restriction[s] on [its] members' competitors." Motion 12. Not so.

To start, this case involves just *one* hardship petition for one *past* compliance year. All ethanol production and blending for 2023 has already occurred, and the Court's decision in this case could not possibly affect demand in that previous year. Recognizing that reality, Growth Energy contends that, if Calumet prevails in this case and its 2023 hardship petition is granted on remand, then it "would relieve Calumet of its obligation to use RINs [Renewable Identification Numbers] to meet its 2023 RFS requirements, freeing those RINs to be used by any obligated

4

party to meet a *future* year's requirements and thereby reducing the national demand for renewable fuel in that future year." Motion 13 (emphasis in original). That contention depends on a prediction about what relief EPA *might* (or might not) provide upon remand. Such speculation is insufficient to justify intervention. *See, e.g.*, *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1307 (9th Cir. 1997) (proposed intervenor's "prophesying falters" in part because "the assertion that its interest might, … at some … unspecified time in the future, diverge from the [government party] is purely speculative, and does not justify intervention as a full-fledged party"); *Benny v. England*, 791 F.2d 712, 721 (9th Cir. 1986) ("Th[e] possibility that our decision could affect [the applicants'] interests is too tenuous to entitle them to intervene [as] of right.").

Growth Energy also fails to point to evidence that granting a single small refinery a hardship exemption will necessarily reduce demand for ethanol nationwide or otherwise negatively impact the future production of its members. Ethanol is the preferred, low-cost octane booster, and small refineries *including Calumet Montana* blend as much of their fuel with ethanol as they can, regardless of whether they receive hardship exemptions. But small refineries also produce diesel, which cannot be blended with ethanol, and a portion of small refineries' fuel output is sold and blended downstream by others, so exempting a small refinery from RFS compliance for a particular year does nothing to reduce the amount of ethanol that will be blended; rather, it simply removes that small

5

refinery's obligation to retire RINs for the volume of fuel that it cannot blend itself.

What's more, RINs have a limited shelf life; they can be used only for compliance for the year in which they are generated or the next year. 42 U.S.C. § 7545(o)(5)(C). This means that RINs generated in 2023 can only be used to meet compliance obligations for 2023 or 2024. And in the latter case, only 20% of a refinery's 2024 compliance obligation may be met by using RINs generated in 2023. 40 C.F.R. § 80.1427(c)(3). On top of that, Calumet Montana is one of the smallest remaining refineries in the United States, and its average daily aggregate crude oil throughput is a fraction even of other *small* refineries' throughput. Calumet Montana Decl. ¶ 4, Doc. 6 (under seal). And Growth Energy admits that its members "collectively produce about two-thirds of the ethanol used to meet the RFS requirements annually, or about 45% of the total RFS requirement." Motion 7–8.

Taken together, it therefore strains credulity to assert that Calumet's 2023 hardship petition (if granted) would directly, traceably, and measurably harm Growth Energy's members in the future. Growth Energy cannot support its speculative assertion that, if EPA were ultimately to grant hardship relief to Calumet, then it would cause harm to a "direct, non-contingent, substantial, and legally protectable" interest of its members. *Dilks*, 642 F.2d at 1157.

6

That is why the D.C. Circuit recently held that Growth Energy (and other renewable-fuel groups) lacked standing in a case involving RFS hardship petitions, including one for Calumet. *See Sinclair Wyoming Refin. Co. LLC v. EPA*, 114 F.4th 693, 722 (D.C. Cir. 2024). There, the D.C. Circuit unanimously found that Growth Energy had not made a plausible showing that EPA's decisions on *more than 30* small-refinery hardship petitions would affect its interests. *Id*. Specifically, the court noted that "[s]peculative and unsupported assumptions regarding the future actions of third-party market participants is insufficient." *Id*. And "[w]hile Growth Energy … alleged that some future reduction in demand for renewable fuels is possible, nothing in the briefing or record suggest[ed] that a reduction in overall market demand [was] 'certainly impending' as a result of the Compliance Actions." *Id*. The same is certainly true here, in a case involving just *one* small refinery hardship petition.

Like in *Sinclair Wyoming*, it is hardly clear that waiving a single RIN obligation for a single year for a single, very small refinery would reduce nationwide demand for Growth Energy's members' renewable fuels. *Id*. at 722–723. Even more so when this Court considers that, in *Sinclair Wyoming*, hardship relief relating to billions of gallons of blending—spread among more than 30 small refineries—was on the line. *See id*. at 700–706, 722–723 ("The Compliance Actions here cover only 31 small refineries, and Growth Energy has offered no evidence about how

7

a waiver of RFS obligations for those refineries will change the overall market demand for renewable fuels."). If Growth Energy did not have standing there, it cannot justify intervention here, where just one small refinery's RFS obligation for a single year is at issue.

"Growth Energy also maintains that courts have 'routinely' found Growth Energy had standing in other cases challenging EPA actions, which, it implies, supports standing here." *Sinclair Wyoming*, 114 F.4th at 723; *see* Motion 9. "But Growth Energy's past demonstration of standing to challenge different EPA actions does not diminish its burden to establish standing in this case." 114 F.4th at 723 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). Growth Energy's reference to its participation in other litigation involving RFS-related actions does not move the needle on its motion for intervention here.

Again, Growth Energy has no legal right to see EPA deny the type of forbearance that Congress established merely to prop up demand (allegedly) for Growth Energy's members' products, and their property will not be directly impacted by vacatur of EPA's denial of Calumet's petition for the 2023 compliance year. There simply is nothing to suggest that, if Calumet's requested remedy is granted, it will have a "direct, immediate, and harmful effect on [Growth Energy's] legally protectable interest." *Donnelly v. Glickman*, 159 F.3d 405, 411 (9th Cir. 1998) (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir. 1995)) (cleaned up).

Growth Energy has not made any plausible showing that *this case* will impact the nationwide demand for its members' ethanol products. And the "[f]ailure to satisfy any one of the requirements [for intervention] is fatal to the application." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

**2. Growth Energy's Declaration is Inadequate to Support the Motion.**

Setting aside the legal and analytical flaws in Growth Energy's indirect, contingent, insubstantial, and speculative theory of interest, Growth Energy's case for intervention fails for the independent reason that the declaration on which it relies does not withstand scrutiny. *See, e.g., Racing Enthusiasts & Suppliers Coal. v. EPA*, 45 F.4th 353, 359 (D.C. Cir. 2022) (petitioner lacked standing to challenge EPA order because, among other things, its conclusory declaration did not advance any evidence establishing how the challenged order harmed its interests).

The Motion relies on the Skor Declaration to support the assertion that small refinery hardship exemptions drive down demand and prices for ethanol, thereby harming Growth Energy's members. *See* Motion 7–8, 12 (citing Skor Decl. ¶¶ 8, 9, 11–12, Doc. 13.1). But this declaration from a trade association CEO provides no evidentiary basis for granting the Motion. The declarant simply (and self-servingly) states that "[w]hen EPA grants exemptions without adjusting its national RFS standards to

9

account for them, the exemptions in effect reduce the national demand for renewable fuel, including and especially ethanol," without citing *anything* to support her assertion. Skor Decl. ¶ 11. Ms. Skor does not explain how she arrived at this causal conclusion, nor does she attribute it to any objective evidence. *See id.* Indeed, the Skor Declaration does not contain any citations at all. *See generally*, Skor Decl.

Growth Energy's declarant offers nothing more than unsupported, conclusory assertions insisting that small refinery hardship exemptions decrease demand for ethanol. The declarant's *ipse dixit* is not adequate evidence to substantiate these assertions of harm, and Growth Energy therefore cannot establish grounds to intervene. *See Racing Enthusiasts*, 45 F.4th at 359. For this additional reason, the Motion should be denied.

### 3. Growth Energy Fails to Establish that EPA will not Adequately Represent its Interest.

The Motion is further flawed because, even if Growth Energy's members had a direct, non-contingent, substantial, and non-speculative legally protectable interest, Growth Energy has failed to show that the federal government will not adequately represent that interest on appeal.

When an applicant for intervention has the "same ultimate objective" as an existing representative in the suit, "a presumption of adequacy of representation arises." *Arakaki*, 324 F.3d at 1086. It is not enough that Growth Energy "*may* take a different view of EPA's role in this case" or that it intends to emphasize a purported harm to ethanol

producers but that "EPA *might* not" do the same. Motion 15 (emphases added). Such equivocal assertions about *possible* (not even certain) divergent strategies do not establish a right to intervene.

For example, in *Oakland Bulk & Oversized Terminal v. City of Oakland*, this Court rejected an attempt by a proposed intervenor to prove that a government entity's representation was inadequate. 960 F.3d 603, 620 (9th Cir. 2020). In that case, the City of Oakland was sued after it prohibited a contractual partner from moving coal through a commercial terminal. *Id.* at 607–608. Two environmental organizations sought to intervene as of right, contending that although they shared Oakland's goal of "upholding the Ordinance and Resolution" banning the transportation of coal, their "narrower interest"—which consisted of "a focus on health, safety and environmental protections, as opposed to Oakland's broader concerns that include such matters as the City's finances and its contractual relationship with [the plaintiff]"—demonstrated the inadequacy of Oakland's representation. *Id.* at 620.

This Court disagreed, explaining that merely having different perspectives was "alone … insufficient" to establish inadequate representation. *Id.* This Court further noted that the proposed intervenors "failed to offer persuasive evidence, at the time of their motion to intervene, that Oakland's broader interests would lead it to stake out an undesirable legal position." *Id.* So too here.

11

Growth Energy and EPA share the same ultimate objective in this action—affirmance of EPA's denial of Calumet's one small refinery hardship petition for the 2023 compliance year. That objective will be completely satisfied if EPA prevails in this action. Growth Energy has not shown any evidence that could rebut the presumption in favor of the adequacy of EPA's representation of Growth Energy's purported interests. For this additional reason, the Motion should be denied. *See, e.g., Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996) (environmental organizations not permitted to intervene where federal government adequately protected organizations' interests, even with differences in strategies); *Arakaki*, 324 F.3d at 1086 (explaining that "differences in litigation strategy do not normally justify intervention").

4. **Growth Energy's Request for Permissive Intervention is Similarly Improper.**

Growth Energy also suggests that it satisfies the standard for permissive intervention. Motion 8–9 & n.2. It does not.

"In exercising its discretion" whether to allow permissive intervention under Rule 24(b), the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Here, the proposed intervention would reveal Calumet's confidential business information to Growth Energy. Calumet submitted highly sensitive, confidential business information

with its hardship petition as required by EPA, and EPA issued a confidential, refinery-specific denial decision document. Calumet Montana Decl. at Attachments 1 and 2, Doc. 6 (under seal). Presently, the fact-specific record of EPA's denial of Calumet's 2023 hardship petition is not in public view. Allowing Growth Energy to intervene in this appeal could inappropriately grant it access to valuable and sensitive competitor data that is otherwise confidential and protected from disclosure by federal regulation. *See* 40 C.F.R. § 2.202.

For this reason, Growth Energy's perfunctory request for permissive intervention should be denied.

### 5. Calumet Does Not Object to Growth Energy's Participation as Amicus.

Growth Energy seeks to intervene so it can "reflect the interests of the commercial enterprises that comprise its membership" and because it "may take a different view of EPA's role." Motion 15. Representing such views to this Court can be achieved via Growth Energy's participation as *amicus curiae*, which does not require intervention. *See* Fed. R. App. P. 29. If the Court denies the Motion, and Growth Energy wishes to participate as *amicus curiae*, Calumet will not oppose such participation. *See, e.g.*, *Greene*, 996 F.2d at 978 (affirming denial of motion to intervene and noting that district court "accommodated their concerns by allowing their participation as amicus curiae"). That course would appropriately balance all the relevant interests, including the need for efficient judicial

resolution of the controversy between Calumet and EPA; the need to protect Calumet's confidential information; and Growth Energy's interest in advancing its legal arguments even without any demonstrable, concrete interest in the outcome.

## Conclusion

For the foregoing reasons, this Court should deny Growth Energy's Motion to Intervene.

Dated: March 10, 2025

Alexandra Magill Bromer
PERKINS COIE LLP
700 Thirteenth Street, N.W.,
Suite 800
Washington, D.C. 20005-3960
Telephone: 202.654.6297
Facsimile: 202.654.6211
ABromer@perkinscoie.com

Respectfully submitted,

*s/ Michael R. Huston*
Michael R. Huston
Karl J. Worsham
Jordan M. Buckwald
PERKINS COIE LLP
2525 East Camelback Road,
Suite 500
Phoenix, AZ 85016
Telephone: 602.351.8000
Facsimile: 602.648.7000
MHuston@perkinscoie.com
KWorsham@perkinscoie.com
JBuckwald@perkinscoie.com

*Attorneys for Calumet Montana Refining, LLC*

14

## CERTIFICATE OF COMPLIANCE

This document complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,956 words, excluding the parts exempted by Rule 27(a)(2)(B); and (2) the typeface and type style requirements of Rule 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word (the same program used for the word count).

Dated: March 10, 2025

                               *s/ Michael R. Huston*
                               Michael R. Huston
                               PERKINS COIE LLP

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

Dated: March 10, 2025

                                        *s/ Michael R. Huston*
                                        Michael R. Huston
                                        PERKINS COIE LLP